Robert Mackey, Esq. (CA Bar No. 125961)
**THE LAW OFFICES OF ROBERT MACKEY**
16320 Murphy Road
Sonora, CA 95370
Tel: (412) 370-9110
Email: bobmackeyesq@aol.com

Matthew A. Smith, Esq. (CA Bar No. 309392)
**MIGLIACCIO & RATHOD LLP**
315 Montgomery Street
Suite 900
San Francisco, CA 94104
Tel: (202) 470-3520
Email: msmith@classlawdc.com

Sara J. Watkins, Esq.*
**ROBERT PEIRCE & ASSOCIATES, P.C.**
437 Grant Street, Suite 1100
Pittsburgh, PA. 15219
Tel: (412) 281-7229
 *Pro Hac Vice application forthcoming

*Counsel for Plaintiff and the Proposed Class*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SANNAM ELAZARI,** *on behalf of herself and all others similarly situated,* | **Case No:** |
| **Plaintiff,** | **CLASS ACTION COMPLAINT** |
| **v.** | **JURY TRIAL DEMANDED** |
| **VERACITY WELLNESS INC.,** | |
| **Defendant.** | |

1

Plaintiff Sannam Elazari brings this action on behalf of herself and all others similarly situated, by and through their undersigned counsel, against Veracity Wellness Inc. ("Veracity" or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to the Plaintiff, which are based on personal knowledge.

## NATURE OF THE ACTION

1. Plaintiff, on behalf of herself and all putative members of the "Class" (defined below), brings claims against Veracity as a class action for deceptive marketing practices. Plaintiff alleges violations of California's False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq*.), Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200-17210), and Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750-1785).

2. By falsely advertising that consumers purchasing Defendant's dietary supplement called "Metabolism Ignite™" capsules (hereinafter the "Product") will see "un-hunger" and weight loss benefits from an alleged increase in GLP-1 levels, Defendant has violated California's False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq*., and Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200-17210).

3. This action seeks damages for Plaintiff and members of the proposed Class for purchasing the Product as well as public injunctive relief to stop Defendants from fleecing Californians in the future.

## PARTIES

4. Plaintiff Sannam Elazari is a citizen and resident of Los Angeles, California.

5. Defendant Veracity Wellness Inc. is a Delaware corporation with a principal place of business in the State of New York. Veracity makes and distributes dietary supplements, including the Product, throughout the United States and, specifically, to consumers in the State of California.

## JURISDICTION AND VENUE

6.      This action is properly before this Court, and this Court has subject matter jurisdiction over this action under the Class Action Fairness Act. Specifically, at least one member of the proposed class is a citizen of a different state from Veracity, the number of proposed Class members exceeds 100, and the aggregate amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interests and costs. *See* 28 U.S.C. § 1332(d)(2)(A).

7.      This Court has general and specific jurisdiction over the Defendant because Defendant has sufficient minimum contacts within the state of California to establish Defendant's presence in the state of California, and certain material acts upon which this suit is based occurred within the state of California. Veracity does substantial business in the state of California and within this District and otherwise maintains requisite minimum contacts with the state of California. Specifically, Defendant Veracity distributed and sold the Product in the state of California.

8.      Venue is also proper in this District under 28 U.S.C. § 1391(b)(2) because Defendant is subject to personal jurisdiction within the state of California and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District, including that Plaintiff purchased and used the Product in the state of California and in this District. Additionally, Veracity distributes the Product in this District, receives substantial compensation and profits from the sale and lease of Product in this District, and has and continues to conceal and make misrepresentations and material omissions in this District.

## FACTUAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS

### A. GLP-1 Agonist medications

9.      Glucagon-like peptide-1 (GLP) agonists are a class of medications designed to treat type 2 diabetes that have shown themselves to also be extremely effective in helping people lose weight. GLP-1 agonists like semaglutide (Ozempic, Wegovy, Rybelsus) and dual GLP-1/GIP (glucose-dependent insulinotropic polypeptide) agonists like tirzepatide (Mounjaro, Zepbound) have become hugely popular as a result of their effectiveness.

10. GLP-1 is a hormone made in the small intestine and the nucleus of the solitary tract (a region of the brain) that triggers the release of insulin from the pancreas (lowering blood sugar), blocks the release of glucose into the bloodstream, slows stomach emptying, and increases feelings of satiety.

11. Yet, GLP-1 has a half-life of just one to two minutes, as it is quickly degraded by enzymes in the body. As a result, no clinical data supports the notion that simply boosting the amount of naturally occurring GLP-1 in the body has sustained weight loss effects.

12. What makes synthetic GLP-1 agonists so effective compared to naturally occurring GLP-1 is that the amino acid sequence of GLP-1 has been modified to make the agonists resistant to being broken down by the enzymes that break down GLP-1. Semaglutide, for example, has a half-life of about seven days when administered by injection—which is why people who take Ozempic or Wegovy take weekly injections—as opposed to one to two minutes.

13. Prescription GLP-1 agonist medications are widely understood by consumers to be pharmaceutical products designed to produce clinically meaningful appetite suppression and weight loss through sustained activation of GLP-1 pathways.

14. Given the effectiveness of synthetic GLP-1 agonists, the market has skyrocketed in recent years. The worldwide market in 2024 is estimated to have been more than $25 billion, and the market is estimated to rise to between $50 billion and $133 billion worldwide by 2030.

15. Yet, synthetic GLP-1 agonists are very expensive, and for those whose insurance will not cover the drugs, they are often cost-prohibitive.

**B. Defendant's Uniform Marketing Campaign**

16. Defendant is in the business of developing, manufacturing, packaging, promoting, advertising, and selling purported dietary supplement products under the brand name "Veracity". These dietary supplements include the Product, Metabolism Ignite™ capsules.

17. Defendant markets the Product through a comprehensive and uniform advertising strategy across standardized channels, including packaging, online product pages, social media, and other promotional materials, using substantially similar messaging directed to consumers

nationwide. In these advertisements, Defendant makes unsubstantiated, false, and/or misleading claims regarding the Product.

18.     Defendant's marketing emphasizes that the Product could "boost" or "support" GLP-1 in a manner that would translate into appetite control and weight-loss outcomes associated in the public mind with prescription GLP-1 agonist medications.

19.     Marketing that positions a dietary supplement as a "natural" alternative or equivalent to prescription GLP-1 agonists conveys to reasonable consumers that the supplement can deliver meaningful effects on appetite and weight loss.

20.     Defendant Veracity markets and sells its Product hoping to cash in on the synthetic GLP-1 agonist craze and swindle Americans, including Californians, into buying its Product.

21.     The "GLP-1 craze" includes pushing "supplements claiming to replace GLP-1 agonists completely, 'natural' versions of GLP-1 agonists that may work but be substantially less effective, and supplements intended to be taken alongside prescription medication to 'boost' GLP-1 production."[1]

22.     Defendant Veracity leverages consumer anxiety by highlighting the potential adverse effects associated with synthetic GLP-1 agonist medications, like Ozempic, such as permanent stomach damage and paralysis, sudden vision loss and irreversible blindness, heart muscle breakdown, to position its Product as a safer, natural, more sustainable alternative.

---

[1] Hannah Grabenstein, *In the gray world of GLP-1 supplements online, health experts urge caution*, PBS NEWS (Sept. 3, 2025), https://www.pbs.org/newshour/health/what-to-know-before-you-buy-a-weight-loss-supplement-on-tiktok.



6



23. For example, Defendant has utilized paid sponsorships on Instagram to highlight the potential adverse effects associated with synthetic GLP-1 agonist medications to position and promote their Product as a safer, natural, more sustainable alternative.




24.    Defendant's advertising further conveys that the Product's claimed benefits are supported by reliable scientific research, thereby communicating to consumers that Defendant possesses competent substantiation for the specific weight-loss and appetite-control claims being made.

25.    Defendant utilizes the same comprehensive advertising strategy on their website.

veracity     Shop    Metabolism Ignite    Learn    Take the Metabolic Protocol Quiz    Science

## Our Healthy Weight Loss Difference

Metabolism Ignite delivers healthy weight by healthy means. Our commitment to proven, sustainable results and long term health is unmatched.

| | Metabolism Ignite | GLP-1 Medications | Other GLP-1/ Metabolism Supplements |
|---|---|---|---|
| 100% Safe, Natural Ingredients | ✓ | ✕ | ✓ |
| Boosts Natural GLP-1 | ✓ | ✕ | ✕ |
| Activates AMPK Pathway To Boost Metabolism | ✓ | ✕ | ✕ |
| No Injectables | ✓ | ✕ | ✓ |
| No Negative Side Effects | ✓ | ✕ | ✕ |
| Safe And Effective For Long Term Use And Weight Management | ✓ | ✕ | ✕ |

8

**C. Why the Challenged Claims are Misleading**

26.    The Product's marketing conveys both express and implied messages that consumers will achieve meaningful appetite suppression and weight-loss results comparable to those associated with prescription GLP-1 agonist medications.

27.    This comprehensive advertising strategy is designed to influence consumers by shifting focus from efficacy to perceived harm, thereby creating a narrative that Defendant's Product does not have the side effects attributed to synthetic GLP-1 agonist medicines.

28.    By selectively emphasizing these risks—often without equivalent context regarding clinical benefits or prevalence—Veracity frames synthetic GLP-1 agonist medication therapies as problematic while implicitly elevating its Product as a more balanced solution that has the same results as a synthetic GLP-1 agonist medication.

29.    Yet, Defendant, in order to cash in on the "GLP-1 craze," still markets and advertises their Product as a natural equivalent to a synthetic GLP-1 agonist medications.

30.    For example, Defendant has disseminated extensive print and Internet advertisements promoting the Product as "Nature's Ozempic."






31.    In addition to the misleading visuals, upon information and belief, Defendant also outlines the "main product selling points" for social media influencers to talk about Defendant's Product on their videos.

32.    For example, the following three social media influencer videos appear on Defendant's website.












33.    Defendant's marketing is intentionally misleading, implying that the only difference between the Product and synthetic GLP-1 agonist medications, such as Ozempic, is that the Product does not have the same side effects as synthetic GLP-1 agonist medications.

11

34.    In reality, the Product does not contain a synthetic GLP-1 agonist and uses only natural ingredients, making it impossible for them to deliver the same results as synthetic GLP-1 agonist medications.

35.    To the extent Defendant relied on ingredient-level or preliminary research, such materials would not substantiate the specific, consumer-facing claims at issue where the research does not match the Product's formulation, dosing, population, endpoints, or duration necessary to support the advertised results.

36.    Defendant also omitted material information necessary to prevent the advertising from being misleading, including that the Product was not demonstrated to produce clinically meaningful GLP-1 agonist-like outcomes and that any purported GLP-1 "support" did not equate to the sustained receptor activation associated with prescription GLP-1 agonists.

37.    As a result of Defendant's false and misleading statements and omissions, users of the Product pay a premium for what they believe is a product that has a meaningful and sustained impact on hunger and satiety, similar to an actual synthetic GLP-1 agonist medication.

38.    Defendant's false and misleading statements caused Plaintiff and members of the proposed Classes to pay a premium for the Product. Had Plaintiff known the truth, Plaintiff would not have purchased the Product or would have paid significantly less.

**D. Plaintiff's Purchase, Reliance, and Injury**

39.    Beginning in or around February 2026, Plaintiff Elazari purchased Defendant's Product while in the State of California after noticing an advertisement on Instagram.

40.    Based on Defendant's advertisements on Instagram representing that the Product was safe to use while breastfeeding, Plaintiff was redirected to Defendant's website.

41.    Defendant's website advertisements represented that the Product was safe to use while breastfeeding; the Product was a safer, natural equivalent alternative to weight-loss medications and injections; the Product would safely and effectively transition Plaintiff off GLP-1 medication; and the Product would improve overall energy, health and well-being.

12

42.    Plaintiff purchased the Product in reliance on Defendant's uniform marketing and the central message that the Product would provide GLP-1-related appetite and weight-loss benefits comparable to those associated with prescription GLP-1 agonist medications. Based on Defendant's uniform marketing, Plaintiff believed that purchasing and using the Product would provide her with a real and meaningful boost in Plaintiff's natural GLP-1 production, resulting in appetite control and healthy weight loss, provide similar results as if Plaintiff was on a synthetic GLP-1 agonist medication, such as Ozempic or Wegovy, and provide nutrition that would improve her energy, health, and well-being. Plaintiff relied upon the claims made by Defendant that its advertisements were backed up with reliable and valid scientific research.

43.    The GLP-1 positioning and the comparison to prescription GLP-1 agonists were material to Plaintiff's purchasing decision and would be material to reasonable consumers seeking appetite control and weight loss.

44.    Plaintiff would not have purchased the Product, or would have paid less for it, absent Defendant's misrepresentations and omissions.

45.    At no point, either during Plaintiff's research on the Product or at the point of sale, did Defendant disclose that the Product did not have the health benefits equivalent to a synthetic GLP-1 agonist medication that it advertised.

46.    Plaintiff and Class members suffered economic injury, including paying a price premium attributable to the challenged GLP-1 and weight-loss representations and receiving a product worth less than represented.

## CLASS ACTION ALLEGATIONS

47.    Under Fed. R. Civ. P. 23(b)(2), (b)(3) and/or (c)(4), Plaintiff intends to seek certification of a Nationwide Class consisting of:

> **All individuals in the United States who purchased the Product within the relevant limitations period, and/or such subclasses as the Court may deem appropriate.**

48.    Plaintiff also intends to seek certification of a California Subclass, consisting of:

**All persons residing in the State of California who purchased the Product within the statute of limitations.**

49. Plaintiff reserves the right to re-define the Nationwide Class and California Subclass if further information and discovery indicate that the definitions of the Class and Subclass should be narrowed, expanded, or otherwise modified.

50. Excluded from the Class is Defendant; any affiliate, parent, or subsidiary of Defendant; any entity in which Defendant has a controlling interest; any officer, director, or employee of Defendant; any successor or assign of Defendant; anyone employed by counsel for Plaintiff in this action; any judge to whom this case is assigned, his or her spouse, and all persons within the third degree of relationship to either of them and the spouses of such persons.

51. **NUMEROSITY**: The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown and such information is in the exclusive control of Defendant, Plaintiff believes that the Class encompasses thousands of individuals who are geographically dispersed throughout the nation; therefore, the number of persons who are members of the Class are so numerous that joinder of all members in one action is impracticable.

52. **COMMONALITY AND PREDOMINANCE**: There is a well-defined community of interest in the questions of law and fact affecting the Class members.

53. There are questions of law and fact common to all members of the Class: specifically, Plaintiff's claims arise from the same event or practice or course of conduct by Defendant giving rise to those claims of the putative Class, and Plaintiff's claims are based upon the same legal theories as those of the putative Class. Defendant has engaged in a pattern and practice, in violation of the law, of misrepresenting the efficacy and health benefits of the Product. The resolution of this issue—to wit, whether Defendant knowingly sold the Products with misleading information and did not inform Plaintiff and Class members—is a common question of fact and law that will affect all members of the Class in the same manner.

54. Other questions of law and fact common to the Class that predominate over questions that may affect individual members include:

    a. The nature, scope, and operation of Defendant's wrongful practices;

    b. The uniformity of the advertisements created through Defendant's marketing materials;

    c. Whether Veracity misrepresented the efficacy and health benefits of the Product;

    d. Whether Veracity engaged in fraudulent and/or deceptive practices as to the Class members;

    e. Whether Veracity violated state consumer protection laws by misrepresenting the efficacy and health benefits of the Product;

    f. Whether Veracity's conduct amounts to violations of the California Consumers Legal Remedies Act ("CLRA");

    g. Whether Veracity's conduct amounts to violations of California's False Advertising Law;

    h. Whether Veracity's conduct amounts to violations of California's Unfair Competition Law;

    i. Whether Veracity deliberately misrepresented and omitted material facts to Plaintiff and the Class members;

    j. Whether members of the Class may be notified and warned about the contents of the Product and have the entry of final and injunctive relief compelling Veracity to stop its misrepresentations; and

    k. Whether Plaintiff and the Class suffered damages because of Defendant's misconduct and if so, the proper measure of damages.

55. **TYPICALITY**: The claims and defenses of Plaintiff are representative of the Class members they seek to represent and typical of the claims of the Class because they arise from the same course of conduct and are based on the same legal theories as the claims of other Class members. Plaintiff, like all Class members, purchased the Product when they were presented by Defendant, through its representations on the Product's label and through

Defendant's marketing and advertising of the Product, that the Product was a safer, natural, equivalent alternative to synthetic GLP-1 agonist medication.

56.    **ADEQUENCY OF REPRESENTATION**: Plaintiff will fairly and adequately assert and protect the interests of the proposed Class because:

a.  Plaintiff has hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the Class;

b.  Plaintiff has no conflict of interest that will interfere with the maintenance of this class action; and

c.  Plaintiff has suffered consumer-related injuries and damages.

57.    **SUPERIORITY**: class action provides a fair and efficient method for the adjudication of the instant controversy for the following reasons:

a.  The common questions of law and fact set forth above predominate over questions affecting only individual Class members;

b.  The proposed class is so numerous that joinder would prove impracticable. The proposed Class, however, is not so numerous as to create manageability problems; moreover, no unusual legal or factual issues render the Class unmanageable;

c.  Prosecution of separate actions by individual members of the Class would risk inconsistent and varying adjudications against Defendant;

d.  The claims of the individual Class members are small in relation to the expenses of litigation, making a class action the only procedure in which Class members can, as a practical matter, recover for the damages done to them by Veracity; and

e.  A class action would be superior to, and more efficient than, adjudicating thousands of individual lawsuits.

**CAUSES OF ACTIONS**

**COUNT I**
**Breach of the California's False Advertising Law**
**Cal. Bus. & Prof. Code §§ 17500, et seq.**
**(On behalf of the Nationwide Class or, alternatively, on behalf of the California Subclass)**

58.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

59. Plaintiff brings this claim on behalf of herself and on behalf of the Class.

60. Defendant's false, misleading, and deceptive advertising and marketing practices to increase its profits, was intended to induce reliance, and Plaintiff and those similarly situated relied to their detriment on Defendant's false, misleading, and deceptive advertising and marketing practices. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendant through Defendant's false representations and omissions, they would have acted differently by, without limitation, refraining from purchasing the Product or paying less for it.

61. Defendant made and disseminated advertising statements and omissions in connection with the sale of the Product that were likely to deceive reasonable consumers acting reasonably under the circumstances.

62. The challenged advertising conveyed that the Product would provide meaningful GLP-1-related appetite suppression and weight-loss benefits comparable to those associated with prescription GLP-1 agonist medications, and that such claims were supported by reliable scientific research.

63. These representations were false or misleading because the Product could not deliver the advertised GLP-1 agonist-like outcomes as represented and/or Defendant lacked competent and reliable substantiation for the specific claims being made at the time of dissemination.

64. The misrepresentations and omissions were material and were a substantial factor in Plaintiff's and Class members' decisions to purchase the Product.

65. Defendant engaged in these false, misleading, and deceptive advertising and marketing practices to increase its profits. Accordingly, Defendant has engaged in false advertising, as defined and prohibited by §§ 17500, *et seq*., of the California Business and Professions Code.

66. The aforementioned practices also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors, as well as injury to the general public.

67.    As a direct and proximate result of such actions, Plaintiff and the other members of the Class have suffered injury in fact, and have lost money as a result of such false, deceptive, and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. In particular, Plaintiff and those similarly situated paid a premium for the Product, i.e., the difference between the price they paid for the Product and the price they would have paid but for Defendant's misrepresentations and omissions.

68.    Plaintiff seeks, on behalf of herself and those similarly situated, restitution of the difference between what Defendant acquired from Plaintiff, the general public, and/or the Class, and what would have been acquired in absence of the false, misleading, and deceptive advertising and marketing practices complained of herein, which amount will be proven at trial, plus interest thereon.

69.    Plaintiff seeks, on behalf of herself and those similarly situated, a declaration that the aforementioned practices constitute false, misleading, and deceptive advertising.

**COUNT II**
**Breach of the California Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§1750-1785**
**(On behalf of the California Subclass)**

70.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

71.    Plaintiff brings this claim on behalf of herself and on behalf of the California Subclass.

72.    Defendant is a "person" within the meaning of Cal. Civ. Code § 1761(c).

73.    Plaintiff and the members of the Class are "consumers" as defined by Cal. Civ. Code § 1761(d).

74.    The Product is a "good" as defined under Cal. Civ. Code § 1761(a).

75. The CLRA proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).

76. Defendant engaged in unfair and/or deceptive acts in violation of the CLRA principally because it intentionally or negligently concealed and suppressed material facts by representing that the Product was a safer, natural equivalent alternative to weight-loss medications and injections, such as Ozempic; that the Product would safely and effectively transition Plaintiff off GLP-1 medication while maintaining the same benefits of a synthetic GLP-1 agonist medication; and that the Product would improve overall energy, health and well-being.

77. Defendant accomplished this by explicitly representing that the Product was a natural equivalent alternative to synthetic GLP-1 agonist medications and by failing to disclose that the Product did not contain a synthetic GLP-1 agonist in other marketing and Product labeling. Defendant's conduct violated the CLRA, including but not limited to, the following provisions:

   a. Defendant represented and continues to represent that the Product has characteristics, uses, or benefits that it does not have, in violation of § 1770(a)(5);

   b. Defendant represented and continues to represent that the Product is of a particular standard, quality, or grade when, in fact, it is not, in violation of § 1770(a)(7);

   c. Defendant advertised and continues to advertise its Product with the intent not to sell them as advertised, in violation of § 1770(a)(9); and

   d. Defendant represented and continues to represent that its Product has been supplied in accordance with a previous representation when it has not, in violation of § 1770(a)(16).

78. Defendant's conduct was unfair because it exploited consumer demand for GLP-1 agonist-like weight-loss results while shifting consumer focus to perceived safety narratives and away from whether the Product could actually deliver the promised efficacy.

19

79. Defendant's unfair and/or deceptive acts or practices repeatedly occurred in its trade or business and were capable of deceiving a substantial portion of the purchasing public.

80. Defendant knew, should have known, or was reckless in not knowing that the Product was not a natural equivalent alternative to a synthetic GLP-1 agonist medications that Defendant claimed it was and, therefore, that the Product is not suitable for its intended use.

81. Defendant was under a duty to Plaintiff and the Class to disclose that the Product was not a natural equivalent alternative to synthetic GLP-1 agonist medications because:

    a. The facts that Defendant misrepresented to, and concealed from, Plaintiff and the Class are material because a reasonable consumer would have considered (and in fact did consider) them to be important in deciding whether to purchase the Product or pay a lesser price for it; and,

    b. The lack of GLP-1 agonist content of the Product poses a serious fitness consideration for consumers and affects the central utility of the Product for its intended use in weight loss.

82. In failing to disclose that the Product was not a natural equivalent alternative to a synthetic GLP-1 agonist medication, Defendant knowingly and intentionally concealed material facts in violation of its duty to disclose.

83. Plaintiff and the Class members have suffered injury in fact and actual damages resulting from Defendant's material misrepresentations and omissions, including purchasing a Product they otherwise would not have purchased, paying more for the Product than they otherwise would have paid, and being left with a Product of diminished value and utility because it is not an natural equivalent alternative to a synthetic GLP-1 agonist medication.

84. As a direct and proximate result of Defendant's unfair and deceptive conduct, therefore, Plaintiff and the Class members have been harmed and seek declaratory and injunctive relief, to be further determined at trial.

85. Pursuant to Cal. Civ. Code § 1780(a) and (e), Plaintiff and the Class further seek an order awarding (a) actual damages resulting from the purchase of the Product sold throughout

the Class Period to all Class Members; (b) punitive damages; (c) restitution; and (d) attorneys' fees and costs.

86.     Plaintiff provided statutory notice to Defendant of her claims pursuant to Cal. Civ. Code § 1782, which Defendant received on April 30, 2026.

## COUNT III
### Breach of the California's Unfair Competition Law ("UCL")
### Cal. Bus. & Prof. Code §§ 1720-17210
### (On behalf of the California Subclass)

87.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

88.     Plaintiff brings this claim on behalf of herself and on behalf of the California Subclass.

89.     The UCL proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

**Unfair Business Practices**

90.     A business act or practice is unfair under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

91.     Defendant's conduct, including, but not limited to, its false advertising scheme, is unfair because it violated California's public policy, including that which is legislatively declared in the CLRA, requiring a manufacturer to ensure that goods it places on the market are of a particular standard, quality, or grade. Defendant has failed to do this by placing the Product on the market even though it is not a natural equivalent alternative to synthetic GLP-1 agonist medication despite the Product being advertised as one.

21

92.     Defendant acted in an immoral, unethical, oppressive, and unscrupulous manner in at least the following respects:

    a.  Selling Plaintiff and the Class a Product that is not a natural equivalent alternative to a synthetic GLP-1 agonist medication despite it being claimed as one;

    b.  Failing to disclose that the Product is not a natural equivalent alternative to a synthetic GLP-1 agonist medication, despite the opportunity to do so in numerous locations that people in the market for such products would be likely to encounter;

    c.  Failing to exercise adequate quality control and due diligence over the Product before placing it on the market; and,

    d.  Failing to acknowledge the scope and severity of the misrepresentation of the Product not being a natural equivalent alternative to a synthetic GLP-1 agonist medication, which poses serious concerns for consumers in the market for products conducive weight loss.

93.     The harm to Plaintiff and Class members outweighs any rationale for Defendant's practices. There were alternative means of furthering Defendant's legitimate business interests other than deceiving their customers.

**Fraudulent Business Practices**

94.     Defendant's conduct is fraudulent in violation of the UCL.

95.     Defendant's false advertising scheme alleged herein constitutes a fraudulent business practice because Defendant made representations about the Product that were false and misleading.

96.     Specifically, Defendant's fraudulent acts include knowingly and intentionally concealing from Plaintiff and the Class that the Product was not a natural equivalent alternative to a synthetic GLP-1 agonist medication and falsely marketing and misrepresenting the Product as being one when the Protect did not contain a synthetic GLP-1 agonist.

97.     Their statements are likely to deceive, and did deceive, Plaintiff and Class members.

98.    Defendant's misrepresentations and omissions alleged herein caused Plaintiff and the Class to purchase the Product, or pay more than they would have.

99.    Accordingly, Plaintiff and the Class have suffered injuries in fact, including loss of money used to purchase the Product, as a result of Defendant's unlawful, unfair, and fraudulent acts. Absent these acts, Plaintiff and the Class would not have purchased the Product at all, or at least not at the prices they paid.

100.    Plaintiff and the Class seek appropriate relief under the UCL, including such orders as may be necessary to: (a) enjoin Defendant from continuing its unlawful, unfair, and fraudulent acts or practices and (b) restore Plaintiff and the Class any money Defendant acquired by its unfair competition, including restitution. Plaintiff also seeks reasonable attorneys' fees and expenses under applicable law.

**Unlawful Business Practices**

101.    A business practice is unlawful under the UCL if it violates any other law or regulation.

102.    Defendant engaged in unlawful business practices by violating California's False Advertising Law.

103.    Defendant further engaged in unlawful business practices by violating the Consumer Legal Remedies Act, by falsely representing that its supplement has characteristics and benefits that it does not have, is fit for its intended use, and is of a particular standard, quality, or grade.

104.    Defendant's unlawful, unfair, and fraudulent business practices have unjustly enriched Defendant at the expense of Plaintiff and Class members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

a. For an order certifying the proposed Class and appointing Plaintiff and Plaintiff's counsel to represent the Class;

23

b. For an order awarding Plaintiff and Class members actual, statutory, punitive, and/or any other form of damages provided by and pursuant to the statutes cited above;

c. For an order awarding Plaintiff and Class members restitution, disgorgement and/or other equitable relief provided by and pursuant to the statutes cited above or as the Court deems proper;

d. For an order or orders requiring Defendant to adequately disclose the efficacy and health benefits of the Product and enjoining Defendant from misrepresenting that the Product is a safer, natural, side effect free, alternative to GLP-1 agonist medication and omitting accurate efficacy and health benefits information;

e. For an order awarding Plaintiff and Class members pre-judgment and post-judgment interest;

f. For an order awarding Plaintiff and Class members reasonable attorneys' fees and costs of suit, including expert witness fees; and,

g. For an order awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of the members of the Class, hereby respectfully demands trial by jury of all issues triable by right.

DATED: June 8, 2026                    Respectfully Submitted,

*/s/ Robert Mackey*
Robert Mackey, Esq.
CA Bar No.: 125961
**LAW OFFICES OF ROBERT MACKEY**
16320 Murphy Road
Sonora, CA 95370
Tel. (412) 370-9110
bobmackeyesq@aol.com

Matthew A. Smith, Esq.
CA Bar No.: 309392

**MIGLIACCIO & RATHOD LLP**
315 Montgomery Street, Suite 900
San Francisco, CA 94104
Tel. (202) 470-3520
 msmith@classlawdc.com

Sara J. Watkins, Esq.*
**ROBERT PEIRCE & ASSOCIATES, P.C.**
437 Grant Street, Suite 1100
Pittsburgh, PA 15219
Tel. (412) 281-7229
swatkins@peircelaw.com
*Pro hac vice application forthcoming.

*Attorneys for Plaintiff and Putative Class*

25